UNITED STATES of America, Plaintiff,

v.

JG–24, INC., et al., Defendants.

No. CIV. 00–1483(RLA).

United States District Court, D. Puerto Rico.

March 12, 2004.

Jorge Ortiz, Santurce, PR, Pro se.

Manuel Catinchi–Betancourt, San Juan, PR, for Pro Se.

Elizabeth Yu, U.S. Department of Justice, Environment Enforcement Section, U.S. Department of Justice, Washington, DC, for USA, Plaintiff.

Myles E. Flint, U.S. Department of Justice, Environment Enforcement Section, U.S. Department of Justice, Washington, DC, for USA Plaintiff.

Isabel Munoz–Acosta, United States Attorney's Office, Torre Chardon, San Juan, PR, for USA, Plaintiff.

Benjamin Ortiz–Belaval, Ortiz & Rodriguez Law Office, San Juan, PR, for JG–24, Inc., Gloria Alvarez–Nieves, Jorge Ortiz, Defendants.

### *ORDER DISMISSING DEFENDANTS' COUNTERCLAIM FOR LACK OF JURISDICTION*

ACOSTA, District Judge.

The Court has before it plaintiff United States of America's Motion to Dismiss Counterclaim pursuant to Rule 12(b)(1) of the Fed.R.Civ.P., for lack of jurisdiction over the subject matter, and pursuant to Rule 12(b)(6) of the Fed.R.Civ.P., for failure to state a claim under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601, *et seq.* Plaintiffs have also requested that the counterclaim be dismissed for lack of jurisdiction under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*

The issue having been fully briefed by the parties,[1] and considering the proximity of the trial date, the motion is hereby decided in *brevis* disposition.

### *BACKGROUND*

Defendants filed a Counterclaim against plaintiff United States asserting claims sounding in tort, alleging, in essence, that while involved in a Removal Action of defendants' real property, the Environmental Protection Agency (EPA) caused damages to defendants' real property, calculated in more than 20 million dollars. Defendants cite CERCLA and Rule 13(d) of the Fed. R.Civ.P. as the jurisdictional basis for their counterclaim.

### *FACTUAL BACKGROUND*

The J & G Site (the Site) is approximately 40 acres in size and is located in Vega Alta, P.R. Defendant JORGE ORTIZ is a current owner of the J & G Site. Defendant JG–24, INC., a corporation incorporated under the laws of the Commonwealth of Puerto Rico, manufactured fiberglass products at the site from December 1997 through at least April–May 2000.

---

1. *See* Motion to Dismiss Counterclaim (**docket No. 111**); Opposition to Motion to Dismiss (**docket No. 118**); and Reply Memorandum in Support of the United States' Motion to Dismiss (**docket No. 121**).

Pursuant to warrants obtained from the U.S. District Court, EPA conducted investigation and sampling activities at the J & G Site in 1998 and 1999. During April of 1999, the EPA observed that JG–24, INC., was manufacturing fiberglass products at the Site and observed leaking, open and crushed drums and stained soils at the Site. As a result of its investigation, the EPA determined that there were releases and threatened releases of hazardous substances into the environment at the J & G Site and that a removal action was necessary.

In April of 2000, the United States filed the original Complaint in this action, simultaneously seeking an order providing EPA access to the J & G Site to conduct a removal action thereon. The Court Order providing the EPA with access to the site was issued on May 4, 2000. EPA's On Scene Coordinator (OSC), during his preliminary visit, was able to observe that several hundred drums appeared to have been crushed, moved, and/or buried within the area that previously comprised the sinkhole. He also observed that there were smoldering burn areas, including fiberglass, chemicals, and trash at the Site. In light of these observations, and with the approval of the Court, the defendants agreed to a Stipulation, signed on August 30, 2000, which enjoined them from moving the soil, crushing and/or burying drums and burning waste at the Site. The Stipulation also directed defendants to provide access to EPA for the implementation of the removal action until August 30, 2001; later extended until December 31, 2001.

The portion of the site where EPA had observed the deteriorated drums was approximately a 10–acre area which included the fiberglass manufacturing area and a large sinkhole into which drums had been buried. The 10–acre area was essentially the area that was cleaned up. Defendants were thus asked by the EPA to remove equipment, tools, raw materials, product molds and livestock from the manufacturing area prior to the commencement of the removal action, at the same time advising them that the 10–acre manufacturing area was now off-limits to them. Any tools or equipment or materials left over in the manufacturing area after October 8, 2000 were subject to possible damage as a result of the removal action. The remaining 30 acres of the Site were not off-limits to defendants.

Mobilization for the removal action began officially on October 10, 2000. During the removal action, conducted between October 2000 and November 2001, EPA hired a guard service to protect EPA's equipment and supplies, located within the 10–acre manufacturing area. EPA did not monitor access through a smaller dirt road further down from the site through which vehicles could also enter without going through the main gate or the pedestrian access to the site from other locations. EPA did not patrol the remaining separate 30 acres of the site. EPA discontinued the guard service in November 2001 and left the site and did not return, except for groundwater sampling during March and July of 2002 and the permanent closure of the groundwater monitoring wells during October 2002.

## DISCUSSION

Defendants assert that they have suffered money damages for property losses that resulted from the alleged negligent actions of EPA while it was purportedly in possession of the J & G Site, including the separate 30 acres, during the removal action. These include losses to real estate property, marketable goods and equipment losses.

## Jurisdiction Under CERCLA

Defendants' assertion in the Counterclaim that this Court has subject matter jurisdiction under CERCLA cites to two inapplicable sections of the statute. They cite to "42 U.S.C. 9601(21) and (20)(a)(1)." However, 42 U.S.C. § 9601, which is Section(21) of CERCLA, simply defines the word "person". Furthermore, there is no 101(20)(a)(1), (42 U.S.C. § 9601(20)(a)(1)). Therefore, there is no jurisdiction under any of these two cited sections.

In any event, defendants themselves relinquished this jurisdictional argument in their Opposition, acknowledging that CERCLA does not provide "a cause of action for liability against the [US]EPA for alleged tortious [sic] behavior while undertaking a removal action." [2]

## Jurisdiction Under Rule 13(d) of the Fed.R.Civ.P.

In their Counterclaim, defendants also alleged jurisdiction under Rule 13(d) of the Fed.R.Civ.P. However, Rule 13(d) specifically provides no such jurisdiction:

**Counterclaim Against the United States.** These rules shall not be construed to enlarge beyond the limits now fixed by law the right to assert counterclaims or claim credits against the United States or an officer or agency thereof.

In fact, "Rule 13(d) reaffirms the general principle of sovereign immunity by specifically stating that Rule 13 does not extend the right of a party to sue the United States beyond the limits established by statute. As a result, subdivision (d) has the effect of reducing the scope of possible application of Rules 13(a) and 13(b) in the context of suits against the sovereign." 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure,* Civil § 1427 (2d ed.1990) at p. 196.

Regardless, defendants also abandoned this jurisdictional basis in their Opposition to Motion to Dismiss, focusing their arguments instead on the discretionary function exemption of the Federal Torts Claims Act (FTCA), 28 U.S.C. § 1346(b), § 2671 *et seq.*[3]

## Jurisdiction Under the Federal Tort Claims Act

Plaintiffs contend that defendants' Counterclaim falls outside the FTCA's limited waiver of sovereign immunity because it falls within the "discretionary function exemption". Thus, they argue, the limited waiver of sovereign immunity established by Congress through the FTCA is limited by the *Exceptions* set forth in 28 U.S.C. § 2680(a), which states, where pertinent, as follows:

"[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

Numerous cases interpreting the discretionary function exception within the context of CERCLA response actions and conduct relating to security issues have clearly established the United States' immunity from suit. *See e.g., United States Fidelity & Guar. Co. v. United States,* 837 F.2d 116, 123 (3rd Cir.1988); *United States v. Skipper,* 781 F.Supp. 1106, 1114

---

**2.** Defendants' Opposition at p. 8.

**3.** Defendants did not assert the FTCA as a jurisdictional basis in the Counterclaim, but did concentrate on the statute in their Opposition, at pp. 6–10.

(E.D.N.C.1991); *United States v. Green,* 33 F.Supp.2d 203 (W.D.N.Y.1998).

In *United States v. Green,* a case very similar to the one before us, defendants filed a counterclaim alleging that EPA agents were negligent in dismantling portions of a facility and in discarding equipment and inventory and were deliberately indifferent to preventing security breaches at the site. There, the Court found that defendants had not met their burden to establish jurisdiction over the counterclaim because "[a]ctions taken within the scope of an official's employment are presumed to be grounded in public policy, and as such, protected from suit in tort by the discretionary function exception." *United States v. Green,* 33 F.Supp.2d at 223, (citing *United States v. Gaubert,* 499 U.S. 315, 325, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)).

■ We must do the same here. Defendants argue that the August 30, 2000 Stipulation[4] did **not** give discretion to the EPA as to what had to be done at the 40 acre site during the removal action, yet they fail to put forth any support for this assertion.

The Stipulation itself did not impose any specific mandatory requirements on the EPA, and neither could it have, as the Stipulation is not a federal statute, regulation, or policy. Furthermore, the Stipulation, contrary to their arguments, cannot serve as an independent jurisdictional basis for the counterclaim.

Defendants' other argument, that CERCLA, through its Section 104(a)(1), 42 U.S.C. 9604(a)(1), does provide a specific regimen on what EPA employees can or cannot do while in a removal action, is equally unsupported and off the mark.

■ Section 104(a)(1) of CERCLA provides EPA with general and broad authority to conduct CERCLA response actions; it does not impose specific and mandatory requirements as alleged by defendants. Thus, as the First Circuit has stated in *Muniz–Rivera v. United States,* 326 F.3d 8 (1st Cir.2003), "[t]he jurisprudence of the FTCA permits us to classify actions as non-discretionary only if a federal stature, regulation, or policy *specifically* instructed federal officials to follow a *specified course of action.*" (emphasis added) (citing *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)); *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *Irving v. United States,* 162 F.3d 154, 163 (1st Cir.1998) (en banc).

Because defendants can point to no statutory or regulatory provisions that provide explicit direction to EPA or its agents in the context of a removal action, we conclude that any actions or omissions by the EPA with respect to the J & G Site were associated with EPA's CERCLA response actions and were therefore discretionary.

## *CONCLUSION*

Based on the above, defendants' Counterclaim (**docket No. 100**) is hereby **DISMISSED** for failure to establish jurisdiction under CERCLA, Rule 13(d) of the Fed.R.Civ.P. or under the FTCA.

Partial Judgment to issue.

IT IS SO ORDERED.

---

4. Docket No. 20.